IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**GENA LEANNE WHILLOCK**                                                                 **PLAINTIFF**

V.                              CASE NO. 3:18-CV-3089

**UNITED OF OMAHA LIFE INSURANCE COMPANY**
**and JOHN AND JANE DOE 1–100**                                                          **DEFENDANTS**

OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 22) of the Honorable Erin L. Wiedemann, Chief United States Magistrate Judge for the Western District of Arkansas, filed in this case on April 21, 2020. The Magistrate Judge recommends affirming the termination of Plaintiff Gena Leanne Whillock's benefits under her former employer's long-term disability plan. Ms. Whillock filed objections to the R&R (Doc. 25), and Defendant United of Omaha Life Insurance Company ("United") filed a response to the objections. The Court has now reviewed the entire case *de novo*, paying particular attention to those findings or recommendations to which objections were made. See 28 U.S.C. § 636(b)(1)(C). For the reasons stated herein, Ms. Whillock's objections are **OVERRULED**, and the R&R is **ADOPTED IN ITS ENTIRETY**.

Ms. Whillock was employed as an account executive for Community Publishers, Inc. ("CPI"), beginning on August 19, 2002. The job involved only light work, and her responsibilities included contacting customers for advertising, driving to customers' businesses, walking, sitting, working on the computer, and answering phone calls. On September 3, 2014, she initiated a claim for short-term disability benefits with her

employer after receiving a diagnosis of neurosarcoidosis.[1] Her employer's disability plan administrator, United, reviewed Ms. Whillock's claim for short-term disability benefits and awarded them on September 10, 2014. On January 12, 2015, United approved her claim for long-term disability benefits. However, on July 11, 2016, United contacted Ms. Whillock and informed her that she no longer met the initial twenty-four month definition of "Disabled" under the plan because her medical records failed to substantiate that she continued to suffer from a condition that rendered her unable to perform the material duties of her former job. Her long-term disability benefits were therefore terminated on July 11, 2016.

Ms. Whillock appealed the denial of benefits on November 30, 2016. Attached to her appeal were medical reports completed by her doctors as well as records of test results. United performed a review of her records, but on February 27, 2017, upheld its initial denial of benefits. Ms. Whillock filed suit against United and CPI in state court on July 13, 2018. The case was removed to this Court on August 27, 2018, and then the matter was referred to Magistrate Judge Wiedemann for an R&R. Just before briefing was due, Ms. Whillock voluntarily dismissed CPI as a defendant, leaving United as the only Defendant in the case.[2]

Ms. Whillock objects to the R&R's recommendation that the Court uphold United's denial of long-term disability benefits. Her specific objections are rife with grammatical

---

[1] As the Magistrate Judge observed, neurosarcoidosis "is characterized by inflammation and abnormal cell deposits in any part of the nervous system—the brain, spinal cord, or peripheral nerves." (Doc. 22, p. 4 n.2).

[2] Though John and Jane Doe 1–100 are included in the style, they have never been identified by Ms. Whillock nor discussed in the briefing. These unknown individuals are therefore dismissed.

errors and, thus, are difficult to make out.[3] Nevertheless, the Court understands that Ms. Whillock believes the record fails to point to any significant medical event that resulted in a change in her eligibility status between the time she was initially awarded benefits and the time her benefits were terminated. She also disagrees with the opinions of United's medical reviewers and asserts that United should have consulted with a pain specialist before terminating benefits. Finally, she adds that "[n]one of the medication and its effect on Plaintiff were considered in the denial especially those that would prevent her from traveling by vehicle which is listed as a material duty of her occupation." (Doc. 25, p. 8).

　　The Court disagrees that the medical evidence fails to point to a change in Ms. Whillock's condition after long-term benefits were awarded in January of 2015. There are two MRIs in the record dated January 14, 2015, and May 12, 2015, that assess a lesion on Ms. Whillock's cervical spinal cord that had been causing neck pain, arm pain, and headaches. *See, e.g.*, AR[4] 350 & 351. The 2015 MRIs compare the size of the lesion as recorded on September 26, 2014, to the size recorded in early 2015 and note that it has "markedly decreased." *Id.* Next, an MRI taken on October 30, 2015, indicates "essentially complete resolution of the enhancement in the right dorsolateral cord with almost complete resolution of the T2 signal . . . ." (AR 353). Finally, an MRI from April 28, 2016, reveals: "No convincing myelopathic cord signal abnormality within the thoracic spinal

---

[3] For example, the Court wrestled with the following unintelligible sentences in her brief: (1) "Plaintiff admits to his mistake when review his arguments he unintentionally placed language from the Short Term Policy into his notes prior to writing and agrees with the Court that the definition is correct."; (2) "Plaintiff will agree with the Magistrate that a job duty list was provided and it appears to Plaintiff all such were material from the Magistrates determination which Plaintiff will not object." (Doc. 25, p. 7).

[4] "AR" is a reference to the joint administrative record that the parties submitted, which is located at Document 17 of the record.

cord. No enhancement of the thoracic spinal cord or leptomeninges.  No spinal canal or neural formaninal stenosis." (AR 360).  Moreover, Ms. Whillock's treating physician, Dr. Joseph Mayus, who examined her on February 12, 2016, notes the significant improvement of the lesion and Ms. Whillock's ability to stand and walk with a stable gait. (AR 367–368).  Both Dr. Mayus and another treating physician, Dr. Ronald Reese, filled out forms in late 2016 that stated that Ms. Whillock had the ability to perform light-duty work, including sitting for up to four hours per day and standing and walking for up to one hour each per day.  (AR 281–84).

With respect to Ms. Whillock's disagreement with the opinions of United's medical reviewers, the Magistrate Judge correctly observes that United was under no legal obligation to defer to the competing opinions of Ms. Whillock's treating physicians.[5] See Doc. 22, p. 14.  The law is clear that "[w]hen there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physician, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006).  In Ms. Whillock's case, though her treating physicians noted that she had certain functional restrictions due to pain, her pain was self-reported and was not supported by physical examinations, musculoskeletal examinations, or radiographic data.  In the absence of objective evidence of debilitating pain, United was free to credit the opinions of its reviewing doctors who found her physically able to perform her former occupation.

---

[5]  Further, the insurer is under no obligation to consult with particular doctors or specialists, including ones a plaintiff may suggest.

4

Finally, as to Ms. Whillock's argument that the side-effects of her opioid pain medications had not been considered by United, the Magistrate Judge correctly points out that there is no objective medical evidence to support the continued, chronic use of opioids, despite the fact that Ms. Whillock's treating physicians have prescribed her opioids for pain continuously since 2014. More recently, Ms. Whillock complained to her doctors of severe neck and joint pain; however, United's reviewing physician, Dr. Julia Ash, noted that the medical record "provides no clinical or radiographic support for such severity of pain." (AR 225). Dr. Ash also observed that if we were to assume that Ms. Whillock's general pain symptoms were caused by fibromyalgia, she is currently taking Cymbalta for that condition. *Id.* Since her self-reported pain symptoms are not tied to objective data, Dr. Ash opined that there was no "support [for] chronic use of opioids" and that "[o]pioids should be discontinued." (AR 229). Once again, United was free to credit Dr. Ash's opinions as to the need for continued opioid use over the opinions of Ms. Whillock's treating physicians.

**IT IS THEREFORE ORDERED** that all objections are **OVERRULED**, the R&R (Doc. 22) is **ADOPTED IN ITS ENTIRETY**, and the final decision to discontinue benefits is **AFFIRMED**. Judgment will enter accordingly.

**IT IS SO ORDERED** on this 15th day of September, 2020.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE